A99A0365. RUBY-COLLINS, INC. v. COBB COUNTY.
(515 SE2d 187)

McMURRAY, Presiding Judge.

On February 9, 1995, plaintiff Cobb County, Georgia ("the County") commenced this breach of contract action against defendant Ruby-Collins, Inc. ("RCI") and RCI's surety, defendant Reliance Insurance Company ("Reliance"), alleging RCI defectively performed its obligations under a construction contract for the expansion of a water reclamation facility known as Cobb County's Noonday Creek Treatment Center. The complaint sought additional damages for delayed performance and for the expenses of litigation. As against Reliance, the County sought contractual damages and statutory penalties under OCGA § 10-7-30. Defendants' joint answer denied the material allegations of any breach and raised multiple counterclaims. Count 2 of the counterclaim invoked 42 USC § 1983, alleging an unconstitutional taking without due process of law. This was based upon a resolution passed by the Cobb County Board of Commissioners that purportedly rendered RCI "ineligible to enter into

any contracts and would be removed from the list of contractors pre-qualified to bid on construction contracts with the Cobb County Water and Sewer Department." RCI alleged this was done without notice or an opportunity to appear and give evidence, amounting to a "blacklisting" of RCI.

After discovery, cross-motions for partial summary judgment as to Count 2 of RCI's counterclaim were filed. The following chronology is undisputed:

Between 1979 and 1993, RCI successfully completed 17 projects for the County, valued at more than $78 million. In June 1991, the County awarded defendant RCI an $18 million contract for renovations and additions to the Noonday Creek Treatment Center, including a specially designed $4 million incinerator to be constructed by a subcontractor, Enviroquip, Inc. By July 1993, RCI had substantially completed performance of this $18 million contract and this work was accepted by the County. Nevertheless, on November 24, 1994, the County Attorney sent RCI a formal notice of termination due to the alleged default of RCI. The County contended that the specially designed incinerator, installed by the subcontractor Enviroquip, did not perform to the County's satisfaction. Despite RCI's recently approved application to remain on the list of pre-qualified contractors for County water and sewage construction, on January 24, 1995, the County Board of Commissioners voted to remove RCI and Enviroquip

> from the Water System's Prequalified List of Contractors until legal issues relating to said project are resolved and further authorize[d] the Chairman to execute the necessary documents (approval to add [RCI] and/or Enviroquip back to the Prequalified List of Contractors must be obtained from the Board of Commissioners).

The County concedes the effect of this resolution was to remove RCI "from the list of eligible bidders for future projects . . ., pending resolution of disputes on the Noonday Creek project."

The County's motion for partial summary judgment was granted and, pursuant to OCGA § 9-11-56 (h), RCI brings this direct appeal. In six related enumerations of error, RCI contends the trial court erred in failing to recognize a property or liberty interest protected by due process in not being removed from the list of contractors pre-qualified to bid on County public works. *Held*:

1.

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth

Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

*Bd. of Regents of State Colleges v. Roth*, 408 U. S. 564, 569-570 (I) (92 SC 2701, 33 LE2d 548).

Property interests . . . are not created by the [federal] Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .

*Bd. of Regents of State Colleges v. Roth*, 408 U. S. 564, 577 (III), supra.

To have a property interest in a [claimed government] benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Bd. of Regents of State Colleges v. Roth*, 408 U. S. 564, 577 (III), supra.

OCGA § 36-10-2 provides:

Whenever it becomes necessary to build or repair any courthouse, jail, bridge, causeway, or other public works in any county, the county governing authority shall cause the same to be built or repaired by letting out the contract therefor to the lowest responsible bidder, . . . *provided* that such county authorities shall have authority to reject any and all bids. . . .

(Emphasis supplied.) Contrary to RCI's contentions, cases such as *Ga. Branch, Associated Gen. Contractors &c. v. City of Atlanta*, 253 Ga. 397 (321 SE2d 325) and *Hilton Constr. Co. v. Rockdale County Bd. of Ed.*, 245 Ga. 533 (266 SE2d 157), interpreting "lowest-responsible-bidder" language of similar laws, do not confer upon a *potential* bidder any legitimate claim of entitlement to be prequalified to submit bids. Rather, those cases address the protected interest of one who was demonstrably the lowest bidder who nevertheless was not awarded a contract. Moreover, those cases do not address language contained in the express statutory proviso applicable here: that the "county authorities shall have authority to reject any and all bids at the public letting." OCGA § 36-10-2. According to

Black's Law Dictionary (4th ed. 1951), p. 120, the term "Any" means "Some; one out of many; an indefinite number. [Cit.]" The existence of such a discretion to reject bids is incompatible with an objectively reasonable expectation of legitimate claim of entitlement by any *prospective* bidder. Since, under Georgia law, the county authority may reject some bids or any indefinite number of bids or all bids for a public works, it follows that no particular *prospective* bidder has any legitimate claim of entitlement to be able to bid on any *future* contract the government may let. Consequently, we hold that RCI has no protected property interest in remaining on a list of potential bidders pre-qualified to bid on future public works contracts.

2. " '[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.' *Wisconsin v. Constantineau*, 400 U. S. 433, 437 [(91 SC 507, 27 LE2d 515)]." *Bd. of Regents of State Colleges v. Roth*, 408 U. S. 564, 573 (II), supra. But a government contract potential bidder's protected liberty interest in its commercial reputation is not implicated except where the potential bidder is suspended or debarred based on allegations of fraud or dishonesty. *Transco Security &c. v. Freeman*, 639 F2d 318, 321 [1, 2] (6th Cir. 1981). In the case sub judice, there is no allegation of fraud or dishonesty on the part of defendant RCI, and so there is no corresponding due process requirement of notice and some kind of hearing in order to protect RCI's reputation for honesty and integrity.

3. Remaining contentions have been considered and are found to be without merit. The trial court correctly granted summary judgment as to RCI's second counterclaim alleging an unconstitutional governmental deprivation of a protected interest without due process of law.

*Judgment affirmed. Andrews and Ruffin, JJ., concur.*

DECIDED MARCH 25, 1999 —
RECONSIDERATION DENIED APRIL 7, 1999 — ■

*Schreeder, Wheeler & Flint, David H. Flint, Lynn C. Stewart, Alston & Bird, William H. Hughes, Jr.*, for appellant.

*Freeman, Mathis & Gary, T. Bart Gary, Dorothy H. Bishop*, for appellee.