**Craig McINTOSH, Appellant,**

v.

**James LaBUNDY and Missouri Department of Corrections, Respondents.**

**No. WD 64299.**

Missouri Court of Appeals, Western District.

May 10, 2005.

Thomas Pirmantgen, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Ryan Bertels, Office of Attorney General, Jefferson City, for Respondent.

RONALD R. HOLLIGER, Judge.

Craig McIntosh sought judicial review under RSMo 2000 section 536.150 (uncontested case review under the Missouri Administrative Procedure Act), of a decision by the Missouri Department of Corrections not to place him on a list of qualified therapists for sex offenders. He appeals from a decision dismissing his petition for failure to state a claim because he had no property or liberty interest that would entitle him to judicial review of the decision. We affirm.

## Facts

According to his petition McIntosh is a licensed clinical social worker who received his master's degree in social work from New Mexico State University. McIntosh has education, experience, and expertise in the area of sex offender therapy.

Respondent Missouri Department of Corrections ("DOC") is the agency of the State of Missouri generally charged with the responsibility of custody, treatment and supervision of criminal offenders. Respondent James LaBundy is an employee of the DOC and serves in the capacity of Chief of Sex Offender Services within the Division of Offender Rehabilitation Services. LaBundy oversees the specialized counseling provided to sex offenders while under probation or parole supervision. While sex offenders are under supervision, the DOC often requires them to receive therapy from private therapists who are deemed qualified to provide it. The DOC

maintains a list of agencies and individuals who have been approved by the DOC to provide such services. The list is titled "Probation and Parole State Wide Approved Treatment Resources for Sex Offenders" (Approved Providers List). Therapy from any person who is not on the Approved Provider List will not satisfy the requirements imposed on sex offenders under supervision.

The DOC has established "Sex Offender Therapist Requirements" (the Requirements) for any sex offender therapist who wishes to appear on the Approved Providers List. McIntosh meets all the criteria from the Requirements. The Requirements do not state that they are exhaustive nor do they state that if one meets all the criteria he/she is guaranteed approval as a sex offender therapist. There are no other published criteria regarding the qualifications required for inclusion on the Approved Provider List.

On or about December 5, 2003, McIntosh made a verbal request of LaBundy to include him on the Approved Providers List which was immediately denied verbally by LaBundy. McIntosh then made a written request to LaBundy's supervisor, Dr. Marian Atwell, Chief of Mental Health Services, Division of Offender Rehabilitation Services. Upon receiving the written request, Dr. Atwell telephoned McIntosh and informed him that LaBundy's decision would stand and that no written response explaining the decision would be forthcoming because the evaluation procedure was "informal."

On December 19, 2003, McIntosh made a written request to the Director of the DOC appealing LaBundy's decision. That request was denied in writing. McIntosh then petitioned the Circuit Court of Cole County to review the DOC decision. The Court sustained the DOC's motion to dismiss for failure to state a claim upon which relief can be granted.

## Standard of Review

 Our standard of review of the grant of a motion to dismiss is *de novo*. *Weems v. Montgomery*, 126 S.W.3d 479, 484 (Mo.App.2004). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001).

## Point I

McIntosh brings his action under Section 536.150 of the Missouri Administrative Procedure Act and Article V, Section 18 of the Missouri Constitution as a noncontested case challenge to an administrative action. McIntosh argues vehemently in Point I that he has standing to bring this claim because he meets the Requirements and the DOC's refusal to add him to the list is an encroachment on his private right to make a living. The trial court, however, did not dismiss for lack of standing, it dismissed for failure to state a claim upon which relief can be granted. Reading his complaint liberally, as we must when reviewing a motion do dismiss, McIntosh alleges that the DOC's decision infringes upon his right to make a living as a sex therapist and/or that he is entitled to the privilege of being placed upon the list because of his qualifications.

Article V, Section 18 of the Missouri Constitution provides for judicial review of actions by administrative agencies that affect private rights. MO. CONST. art. V, Section 18. Section 536.150 of the Admin-

istrative Procedure and Review Act furthers that constitutional purpose and affords judicial review of a noncontested case when the agency action determines the "legal rights, duties or privileges of any person" and allows for the court to determine if the individual subject to the decision "was subject to such legal duty, or had such right, or was entitled to such privilege" and whether the agency decision was "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion." Section 536.150.1, RSMo 2000.

■ Thus, to make a prima facie case under Section 536.150, an individual must plead facts that, if true, would show that he has been denied some legal right or entitlement to a privilege by an agency decision that was "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involve[d] an abuse of discretion." Section 536.150.1, RSMo 2000. The issue of this case then becomes, under the facts plead in his petition, does McIntosh have a legal right to be placed on the approved providers list?

■ Property rights protected by due process are not created by the Constitution. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Such property interests and protected rights are created, and their dimensions defined, by existing rules or understandings that stem from an independent source such as state law. *Id.* In this context, McIntosh cannot claim a property right or entitlement unless it arises from an existing rule or understanding that stems from an independent source such as state law. *Cole v. Conservation Comm'n,* 884 S.W.2d 18, 20 (Mo.App.1994).

The application of these principles to this specific fact situation has not yet arisen in Missouri case law. The parties have not directed us to and we have not found identical cases in other jurisdictions. Without direction from the parties we have found cases in other jurisdictions which have some similarity to the situation at hand. In *Bio Tech, Inc. v. Department of Natural Resources,* 235 Mich.App. 77, 596 N.W.2d 633 (1999), the Michigan Court of Appeals reversed the grant of summary judgment to a company who sought to force the Michigan Department of Natural Resources to place them on a list of approved underground storage tank contractors. *Id.* at 636. The requirements for inclusion on the approved contractor list were defined by statute. *Id.* at 635. The plaintiff, Bio Tech, had been qualified and included on a previous list but had failed to meet later promulgated statutory requirements. *Id.* at 634–35. Bio Tech argued that, since it qualified for the original list, inclusion on the list of approved contractors was a license and could not be revoked without due process of law. *Id.* at 635. The Court disagreed, finding that the statutory language created no vested right and, thus, Bio Tech had no legally protected right to placement on the list. *Id.* at 636.

Similarly in *Ruby–Collins, Inc. v. Cobb County,* 237 Ga.App. 517, 515 S.E.2d 187 (1999), the Georgia Court of Appeals found that a contractor had no protected property interest in remaining on a pre-approved contractor list used for receiving bids on public works contracts. *Id.* at 189–90. The contractor argued that he had been "blacklist[ed]" from the list by the County without notice, explanation, or an opportunity to be heard. *Id.* at 188. Once again the deciding factor was whether state law created a vested right. The Court found that the Georgia statute governing how counties control the bidding process did not create any legitimate claim of an entitlement and, thus, the contractor had no

vested property right to appear on the list. *Id.* at 189–90.

Finally, in *Russell Pipe & Foundry Co. v. City of New York*, No. 94 CIV. 8642(JFK), 1997 WL 80601 (S.D.N.Y.1997), the court granted summary judgment to the City on, among other things, plaintiff's claim that inclusion on an approved vendor list constituted a protected property right. *Id.* at *7–8. In so doing the court looked to the rules governing the approved vendor list and found no provision creating a property interest, such as a requirement to show just cause in order to keep an otherwise qualified vendor off the list. *Id.* at *8.

Other jurisdictions have also found that the exclusion of an otherwise qualified contractor from a list of approved contractors does not deprive that contractor of his right to earn a livelihood. *See Vona v. Redevelopment Auth. of Delaware County*, 109 Pa.Cmwlth. 156, 530 A.2d 1018 (1987); *Noreika v. Jayaraj*, No. CV 990152514S, 1999 WL 1268145 (Conn.Super.Ct. Dec. 10, 1999).

In order to prevail McIntosh must show that the agency action of refusing to place him upon the list of approved providers treads upon a legally protected right or privilege. The DOC's refusal to place McIntosh on the Approved Providers List does not deny him his right to work as a sex therapist in any general or particular sense, and he does not allege that he has been denied a license to practice in the field. McIntosh points to no rule, statute, or other authority creating a legal right or entitlement that he be placed on the list of approved providers. McIntosh points to no provision in state law or anywhere else that creates a property interest or privilege in placement on the approved list. In accordance with the above authorities, and in the face of little to no authority indicating otherwise, we find that McIntosh's pe-tition failed to state a legal claim for relief because he had no legal right or privilege to be included on the list of approved sex therapists.

Point denied.

## Point II

■ Point II of McIntosh's appeal asserts that the trial court erred in sustaining the DOC's motion because the Requirements constitute an invalid agency rule not properly promulgated under Section 536.021. The DOC responds that the Requirements are not a rule as envisioned by Section 536.010(4) and, in the alternative, the Requirements are a statement of policy or internal governance and, thus, exempt from the definition of a rule.

Section 536.010(4) defines a rule as an "agency statement of general applicability that implements, interprets, or prescribes law or policy." Section 536.010(4), RSMo 2000. Courts have interpreted this to mean that a rule is an "agency statement of policy or interpretation of law of future effect which acts on unnamed and unspecified persons or facts." *Mo. Nat'l. Educ. Ass'n v. Mo. State Bd. of Educ.*, 34 S.W.3d 266, 287 (Mo.App.2000) (quoting *Branson R–IV Sch. Dist. v. Labor & Indus. Relations Comm'n*, 888 S.W.2d 717, 720 (Mo. App.1994)). Said yet another way by the Missouri Supreme Court, "[r]ulemaking involves the formulation of a policy or interpretation which the agency will apply in the future to all persons engaged in the regulated activity." *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 23 (Mo. banc 2003) (quoting ARTHUR EARL BONFIELD, STATE ADMINISTRATIVE RULE MAKING, Section 3.3.1, at 76 (1986)). The Missouri Supreme Court has also limited the definition of a rule, however, to agency declarations that have a potential impact on the rights of some member of the public. *Baugus v.*

*Dir. of Revenue,* 878 S.W.2d 39, 42 (Mo. banc 1994). Quoting *Baugus:* "Not every generally applicable statement or "announcement" of intent by a state agency is a rule. Implicit in the concept of the word "rule" is that the agency declaration has a potential, however slight, of impacting the substantive or procedural rights of some member of the public." *Id.*

McIntosh spends the majority of Point II arguing that the Requirements do not qualify as one of the exceptions to the statutory definition of a rule from Section 536.010(4). We tend to agree that the Requirements do not qualify as a means of internal management of the Department of Corrections; however, that does not mean that the Requirements constitute a rule. Although his argument eventually returns to the germane question of Point II, that is, whether the agency declaration has the potential of impacting the rights of some member of the public, McIntosh fails to identify what legal rights are being affected by the Requirements. The discussion in Point I outlines why McIntosh has no private right to be included on the list even if he meets the Requirements; any "slight" impact on a non-existent right is of little consequence to the disposition of this case.

McIntosh cites many cases in support of the policy behind engaging in notice and comment procedures when implementing a rule, but few indicating why the Requirements in the present case should constitute a rule. He cites *Kansas Ass'n of Private Investigators v. Mulvihill,* 35 S.W.3d 425 (Mo.App.2000), where the court found that raising license fees on private investigators required publication as a rule. *Id.* at 430. However, the present case involves neither a license to practice a profession nor a fee associated with obtaining a license.

McIntosh also cites other cases offering no support to his position like *NME Hos-*

*pitals, Inc. v. Department of Social Services,* 850 S.W.2d 71 (Mo. banc 1993), where the Missouri Supreme Court found that a policy of disallowing Medicaid reimbursement of psychiatric services other than electroshock therapy was a rule. *Id.* at 74. The case at bar is clearly distinguishable because the agency action in *NME Hospitals* was a statewide policy shift affecting benefit payments to thousands of Medicaid participants. There are no benefits at stake here nor is there a policy involved that affects a large number of residents.

The Requirements at issue are not an "agency statement of general applicability that implements, interprets, or prescribes law or policy." See Section 536.010(4), RSMo 2000. In fact, they are not being "applied" to anyone because the Requirements do not instruct McIntosh how to practice his trade nor do they regulate his professional behavior.

Point denied.

EDWIN H. SMITH, Chief Judge, and VICTOR C. HOWARD, Judge, concur.