# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2220

_____

David Zink,

*Plaintiff - Appellant,*

Michael S. Worthington; John E. Winfield,

*Plaintiffs*

Leon Taylor; Walter T. Storey; Earl Ringo; Roderick Nunley,

*Plaintiffs - Appellants,*

John C. Middleton,

*Plaintiff,*

Paul T. Goodwin; Andre Cole; Reginald Clemons; Cecil Clayton; Mark Christeson; Russell Bucklew; David Barnett,

*Plaintiffs - Appellants,*

Richard Strong; Marcellus S. Williams,

*Intervenors,*

v.

George A. Lombardi; David R. Dormire; Terry Russell; John Does, 2-40,

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 9, 2014
Filed: March 6, 2015
[Published]

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges, En Banc.

_____

PER CURIAM.[1]

Several prisoners sentenced to death in Missouri appeal the district court's[2] dismissal of their complaint challenging the lethal-injection protocol of the Missouri Department of Corrections. The prisoners sued state officials who are charged with planning, supervising, and carrying out executions, and two independent contractors who allegedly have prescribed, produced, or tested the compounded pentobarbital used in the State's current lethal-injection protocol. They sought a declaratory judgment that the lethal-injection protocol violates the Constitution of the United States, the Missouri Constitution, several provisions of state law, and Missouri common law, and an injunction that prevents the defendants from executing them in accordance with the protocol.

_____

[1]Chief Judge Riley and Judges Wollman, Loken, Smith, and Gruender join this opinion. Judge Colloton joins all but Part II.A of this opinion. Judge Shepherd joins all but Part II.B of this opinion.

[2]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri.

I.

This litigation commenced in 2012 when the prisoners challenged what was then a new lethal-injection protocol. In prior years, Missouri's lethal-injection protocol involved the administration of three drugs: "[S]odium thiopental to anesthetize the prisoner and render him unconscious, pancuronium bromide to paralyze him and stop his breathing, and potassium chloride to stop the prisoner's heart." *Ringo v. Lombardi*, 677 F.3d 793, 795 (8th Cir. 2012). In May 2012, after sodium thiopental became unavailable, the State revised its protocol to use a single drug—propofol—as the lethal agent.

In June 2012, the prisoners sued in state court to challenge the new protocol. State officials removed the case to federal court and promptly moved to dismiss the petition for failure to state a claim. The district court denied the motion in part and granted it in part, ruling as relevant here that the plaintiffs had adequately pleaded that the protocol presented a risk of harm that violated the Eighth Amendment and that the prisoners were not required to plead a reasonable alternative method of execution to the use of propofol. The court also ruled that the allegedly higher risk of pain posed by the protocol, compared to the State's prior methods of execution, sufficed to state a claim of unconstitutional *ex post facto* punishment.

In October 2013, the State informed the district court that it had revised its protocol to use pentobarbital, rather than propofol, as the lethal agent. In late 2013, after a discovery dispute, the district court ordered the State to disclose to counsel for the prisoners the identities of the physician who prescribes the pentobarbital used in Missouri executions, the pharmacist who compounds it, and the laboratory that tests the compounded drug. *In re Lombardi*, 741 F.3d 888, 892 (8th Cir.) (en banc), *reh'g denied*, 741 F.3d 903 (8th Cir.), *cert. denied*, 134 S. Ct. 1790 (2014). This court issued a writ of mandamus vacating the district court's order requiring disclosure. *Id.*

at 897. We determined that the complaint then pending failed to state any claim to which the identities of those parties was relevant. *Id.* at 895-97.

In February 2014, the plaintiffs filed a second amended complaint. That complaint alleges ten separate claims, seven of which are at issue in this appeal: (1) that the State's use of compounded pentobarbital constitutes cruel and unusual punishment, in violation of the United States Constitution; (2) that the defendants are deliberately indifferent to the plaintiffs' medical need for their executions not to inflict gratuitous pain; (3) that the State's use of compounded pentobarbital creates a significant risk of increased punishment over previous methods and accordingly amounts to *ex post facto* punishment, in violation of the United States Constitution; (4) that the defendants have deprived them of due process under the United States Constitution by not providing timely and adequate notice of the lethal injection methods; (5) that the defendants have deprived them of equal protection under the United States Constitution by deviating from the execution protocol in certain instances; (6) that the defendants have violated their First Amendment rights under the United States Constitution by refusing to disclose the identities of the pharmacy that compounds the pentobarbital and its suppliers; and (7) that the defendants have violated a number of federal laws by soliciting and using the compounded pentobarbital in executions, all allegedly reviewable under Missouri's Administrative Procedure Act, Mo. Rev. Stat. § 536.150.

In May 2014, the district court granted the State's motion to dismiss the complaint. The court dismissed all claims except for that alleging "cruel and unusual punishment" in violation of the Eighth Amendment and its Missouri constitutional analog. As for the remaining claim, the court ruled that the prisoners' concession that "other methods of lethal injection . . . would be constitutional" did not suffice to state a claim under the Eighth Amendment. But the court allowed the prisoners seven days to amend the claim and address that deficiency by presenting "factual allegations permitting the Court to determine whether the alleged alternative method [of

execution] is reasonably available and less likely to create a substantial risk of harm." The prisoners responded that they did not intend to plead an alternative method of execution, because they believed the law did not require them to do so. In light of that response, the district court dismissed the remaining claim and entered a final judgment. This appeal followed.

## II.

The prisoners' lead argument on appeal is that they stated a claim under the Eighth Amendment that Missouri's lethal-injection protocol violates the prohibition on cruel and unusual punishment.[3] As in *Lombardi*, our analysis must begin with a basic proposition: "[C]apital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality opinion) (internal citation omitted). Any allegation that all methods of execution are unconstitutional, therefore, does not state a plausible claim under the Eighth Amendment. *Lombardi*, 741 F.3d at 895.

*Baze* addressed an Eighth Amendment challenge to a lethal-injection protocol, and our opinion in *Lombardi* summarized the rule of *Baze* as follows:

> Where, as here, there is no assertion that the State acts purposefully to inflict unnecessary pain in the execution process, the Supreme Court recognized only a limited right under the Eighth Amendment to require a State *to change* from one feasible method of execution to another. The controlling opinion of the Chief Justice in *Baze* provides that if a State refuses to adopt a readily available alternative method of execution that would significantly reduce a substantial risk of severe pain, then "a State's refusal *to change its method* can be viewed as 'cruel and unusual' under the Eighth Amendment." 553 U.S. at 52 (plurality opinion)

[3]The prisoners do not develop an argument on appeal concerning the dismissal of their claim alleging cruel and unusual punishment under the Missouri Constitution.

(emphasis added).  In sum:  "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain.  *He must show that the risk is substantial when compared to the known and available alternatives.*" *Id.* at 61 (emphasis added).

741 F.3d at 895-96.

The district court, relying on *Lombardi*, concluded that the second amended complaint adequately alleged that the protocol creates a substantial risk of severe pain. The court ruled, however, that the prisoners failed to allege sufficiently the second essential element of an Eighth Amendment claim—*i.e.*, that there exists a feasible alternative method of execution that would substantially reduce the risk of harm. Although the prisoners conceded in the second amended complaint that "other methods of lethal injection the Department could choose would be constitutional," the court reasoned that this "naked assertion" was insufficient to allege that an alternative method is reasonably available and less likely to create a substantial risk of harm.

To state a claim under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading need not include "detailed factual allegations," but it is not sufficient to tender "naked assertion[s]" that are "devoid of further factual enhancement." *Id.* (internal quotation marks omitted).  A complaint must do more than allege "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.*

## A.

We first address whether the second amended complaint adequately alleges that Missouri's lethal-injection protocol creates a substantial risk of severe pain. We review a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6) de novo. *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). We assume all facts in the complaint to be true, and draw all reasonable inferences in favor of the non-moving party. *Id.*

"[L]egal conclusions" and "threadbare recitations of the elements of a cause of action supported by mere conclusory statements" are not entitled to a presumption of truth when considering the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678. A complaint must be plausible on its face and "'[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Making a plausibility determination is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Stating a plausible Eighth Amendment claim in the context of the prisoners' attack upon Missouri's execution protocol first requires the prisoners to plead sufficient facts indicating that the protocol creates a "substantial risk of serious harm." *See Baze*, 553 U.S. at 50 ("We have explained that to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 846 & n.9 (1994))). Indeed, the prisoners allege the lethal-injection protocol creates a substantial risk of serious harm in that it inflicts a "substantial risk of severe pain." *See id.* at 52. However, successfully pleading facts to demonstrate a

substantial risk of severe pain requires the prisoners to plead more than just a hypothetical possibility that an execution *could* go wrong, resulting in severe pain to a prisoner. The Eighth Amendment prohibits an "'objectively intolerable risk'" of pain, rather than "simply the possibility of pain." *Id.* at 61-62 (quoting *Farmer*, 511 U.S. at 846). The plurality opinion in *Baze* acknowledged that the nature of executions necessarily involves the risk of pain: "Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." *Id.* at 47. But "the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Id.* Instead, the Eighth Amendment requires that the prisoners show the intended protocol is "'*sure or very likely* to cause serious illness and needless suffering.'" *Id*. at 50 (quoting *Helling v. McKinney*, 509 U.S. 25, 33 (1993)).

Relying on this court's decision in *Lombardi*, the district court found the prisoners' second amended complaint adequately alleged that the protocol created a substantial risk of severe pain:

> The Eighth Circuit specifically referenced the language used in Plaintiffs' previous complaints regarding the risk and level of pain necessary to plead an Eighth Amendment violation, and gave no indication such language was insufficient. Based on that fact and the case law cited by Plaintiffs, the Court concludes Plaintiffs sufficiently plead an Eighth Amendment claim regarding the risk and level of pain that the current execution protocol carries.

R. Doc. 437, at 8. Our decision in *Lombardi* addressed the pleading requirement of a feasible alternative to the current lethal-injection protocol. It did not address the sufficiency of the complaint regarding the allegation of a substantial risk of severe pain. Because the district court relied upon our decision in *Lombardi* as the basis for finding the prisoners had satisfied this pleading burden, a determination of the sufficiency of the prisoners' complaint regarding the allegation of a substantial risk of severe pain now requires a more thorough analysis.

When reviewing the sufficiency of a complaint, we review the complaint itself and any exhibits attached to the complaint. *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) ("'[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.'" (quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986))). The prisoners filed a second amended complaint with 32 exhibits attached, including declarations and affidavits from medical professionals.

1.

In the second amended complaint the prisoners rely on analysis from a pharmacology expert and an anesthesiologist in alleging that the use of a compounding pharmacy to produce the execution drug creates an "objectively intolerable risk of pain." It is alleged that "[c]ompounding pharmacy products do not meet the requirements for identity, purity, efficacy, and safety that pharmaceuticals produced under FDA regulations must meet." R. Doc. 338, at 44. The prisoners identify four distinct potential risks which they believe could result from the State's use of compounded pentobarbital. First, they allege that the compounded pentobarbital could be sub- or super-potent. According to the second amended complaint, sub-potent pentobarbital could fail to cause the death of the prisoner, leaving him unconscious with a lower rate of respiration, causing irreversible brain damage. R. Doc. 338, at Ex. 5. Super-potent pentobarbital could result in suffocation and difficulty breathing before losing consciousness. R. Doc. 338, at Ex. 5. Second, the prisoners allege that the pentobarbital could easily be contaminated with allergens, toxins, bacteria, or fungus. The prisoners allege that the injection of pentobarbital so contaminated could cause a painful allergic reaction in the blood. R. Doc. 338, at 45. Third, the prisoners allege that foreign particles could contaminate the compounded pentobarbital, creating the risk that a prisoner could experience serious pain upon injection or could suffer from a pulmonary embolism. R. Doc. 338, at 45. Finally, the

prisoners allege that the drug may not maintain the proper pH,[4] potentially resulting in numerous complications, most notably severe burning upon injection or a pulmonary embolism. R. Doc. 338, at 45. The prisoners also allege that improper storage of the pentobarbital and use beyond its expiration date could exacerbate the potential for these harms. R. Doc. 338, at 49-51.

Asserting that compounding pharmacies commonly lack oversight and regulation, it is alleged that the use of compounding pharmacies "often results in drugs which are contaminated, sub-potent or super-potent, or which do not have the strength, quality or purity" of FDA-regulated drugs. R. Doc. 338, at. Ex. 6. These compounding pharmacies are alleged to be an "emerging, substandard drug industry" that are responsible for the creation of "large quantities of unregulated, unpredictable and potentially unsafe drugs." R. Doc. 338, at Ex. 6. Noting that the lack of regulation allows compounding pharmacies to obtain ingredients from countries with little pharmaceutical oversight, it is alleged that it is impossible to trace the origin of the drugs, resulting in no guarantee that the drugs are what they purport to be. It is alleged that Missouri's current compounded pentobarbital lethal-injection protocol is "replete with flaws that present a substantial risk of causing severe and unacceptable levels of pain and suffering during the execution." R. Doc. 338, at Ex. 5.

The prisoners also allege that the State might administer the execution drugs via central venous access rather than peripheral venous access.[5] R. Doc. 338, at 30. The

---

[4]pH is a measure of the acidity or basicity of a solution. *See Taber's Cyclopedic Medical Dictionary* 1377 (Clayton L. Thomas ed., 16th ed. 1989). According to the affidavits attached to the prisoners' second amended complaint, maintaining a proper pH is an important aspect of a properly produced drug. If a drug is too acidic or too basic, it may be incompatible with human blood, causing various unintended reactions. *See* R. Doc. 338, at Ex. 6.

[5]Central venous access involves the insertion of a catheter into a large vein in a person's neck, chest, or groin. Peripheral venous access involves the placement of

prisoners allege that the use of a central line carries a higher risk of complication in following the lethal-injection protocol, increases the length of the execution, and is more invasive and painful than peripheral venous access. R. Doc. 338, at 32. Notably, the prisoners make no mention of the central vein issues in their briefing before this court, instead focusing on alleged issues relating to the use of compounded pentobarbital. Because the prisoners have failed to brief this issue before our court, we decline to consider it here. *See Neb. State Legislative Bd., United Transp. Union v. Slater*, 245 F.3d 656, 658 n.3 (8th Cir. 2001) (explaining that claims not raised in an initial brief are waived).

2.

None of the alleged potentialities the prisoners identify in the second amended complaint relating to compounded pentobarbital rises to the level of "*sure or very likely*" to cause serious harm or severe pain. The prisoners' allegations are limited to descriptions of hypothetical situations in which a potential flaw in the production of the pentobarbital or in the lethal-injection protocol could cause pain. This speculation is insufficient to state an Eighth Amendment claim. *See Brewer v. Landrigan*, 131 S.Ct. 445, 445 (2010) ("[S]peculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.'" (quoting *Baze*, 553 U.S. at 50)). By noting that the use of compounding pharmacies "often results" in "potentially unsafe drugs," the experts whose views have been incorporated into the second amended complaint underscore that the harms they have identified are hypothetical and not "*sure or very likely*" to occur. R. Doc. 338, at Ex. 6. The prisoners rely on allegations of generalized harms resulting from the use of a compounding pharmacy to produce the pentobarbital and have failed to provide

---

a catheter in a peripheral vein, most commonly in the hand or arm. *See* 6 *The Gale Encyclopedia of Medicine* 4571-72 (Laurie J. Fundukian ed., 4th ed. 2011).

anything more than speculation that the current protocol carries a substantial risk of severe pain.

Even if one of the harms the prisoners identify were to occur, the prisoners offer nothing in their pleading to support the allegation that it would be more than an isolated incident. The prospect of an isolated incident does not satisfy the requirement that prisoners adequately plead a substantial risk of severe pain to survive a motion to dismiss their Eighth Amendment claim. *See Baze*, 553 U.S. at 50 ("[A]n isolated mishap alone does not give rise to an Eighth Amendment violation, precisely because such an event, while regrettable, does not suggest cruelty, or that the procedure at issue gives rise to a 'substantial risk of serious harm.'" (quoting *Farmer*, 511 U.S. at 842)). Accepting as true the *factual* matter alleged in the second amended complaint, if any of the hypothetical situations the prisoners identify came to pass, it would amount to an "isolated mishap" that, "while regrettable," would not result in an Eighth Amendment violation.

3.

Case law from other circuits also supports our conclusion that the prisoners' allegation of a substantial risk of severe pain is inadequate. At least one court has found that an Eighth Amendment challenge to an execution protocol was properly dismissed after the plaintiff-prisoner failed to sufficiently plead a plausible claim that the lethal-injection protocol was *sure or very likely* to create a substantial risk of severe pain. *See Cook v. Brewer*, 637 F.3d 1002, 1008 (9th Cir. 2011). In *Cook*, the Ninth Circuit considered a challenge to Arizona's lethal-injection protocol, a three drug protocol involving the use of sodium thiopental. *Id.* The court found that the prisoner's "reliance on speculative and conclusory allegations [was] insufficient to state a facially plausible claim" when he alleged that the use of non-FDA approved sodium thiopental created a substantial risk of severe pain. *Id.* The prisoner alleged that the unregulated drug could be ineffective, contaminated, and could differ greatly

-12-

in potency, quality, and formation from other FDA regulated drugs. *Id.* at 1006. The court rejected these claims as "speculative and overly generalized," finding that the prisoner failed to make any specific factual allegations regarding the alleged harms arising from the use of an unregulated drug. *Id.* Instead, he only identified hypothetical harms that would be "applicable to every drug produced outside the United States." *Id.* The court thus held that the bare allegations that the sodium thiopental was imported and non-FDA approved did not plausibly show that the drug was "*sure or very likely* to cause serious illness and needless suffering," and the district court had properly dismissed the prisoner's Eighth Amendment claim. *Id.* at 1007.

The same prisoner mounted a second challenge to Arizona's use of sodium thiopental in its three drug lethal-injection protocol, alleging that the drug created a substantial risk of severe pain because there had been 12 adverse drug reaction reports, the drug had been manufactured for use on animals, it had caused problems in three executions in the United States, and the State obtained it unlawfully. *Cook v. Brewer*, 649 F.3d 915, 917 (9th Cir. 2011). The Ninth Circuit again upheld the dismissal of the prisoner's complaint, finding that he had failed to satisfy the pleading requirements to state an Eighth Amendment claim. *Id.* at 918-19. "Because Cook's four new allegations do not support the drawing of any non-speculative conclusions, Cook has failed to state a facially plausible claim that Arizona's planned execution is '*sure or very likely* to cause . . . needless suffering.'" *Id.* (quoting *Baze*, 553 U.S. at 50).

Other circuits have also denied prisoners relief when challenging a compounded pentobarbital lethal-injection protocol. *See Whitaker v. Livingston*, 732 F.3d 465, 468 (5th Cir.), *cert. denied*, 134 S.Ct. 417 (2013) (affirming denial of motion for preliminary injunction when plaintiff-prisoners failed to show state's execution protocol of compounded pentobarbital caused a substantial risk of severe pain when they had "pointed to only hypothetical possibilities" and were unable to "point to

-13-

*some* hypothetical situation, based on science and fact, showing a likelihood of severe pain"); *Wellons v. Comm'r Ga. Dep't of Corr.*, 754 F.3d 1260, 1265 (11th Cir. 2014) (affirming the denial of injunctive relief and declaratory judgment and denying a stay of execution when prisoner did not sufficiently allege that the use of compounded pentobarbital in the state's execution protocol amounted to an Eighth Amendment violation because "speculation that a drug that has not been approved will lead to severe pain or suffering 'cannot substitute for evidence that the use of the drug is *sure or very likely* to cause serious illness and needless suffering'" (quoting *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013)).

4.

The prisoners have failed to include factual allegations in the second amended complaint which permit the reasonable inference that Missouri's lethal-injection protocol is "*sure or very likely*" to create a substantial risk of severe pain. Accepting the factual allegations in the complaint as true, the prisoners fail to satisfy their burden under the Eighth Amendment because they rely entirely on hypothetical and speculative harms that, if they were to occur, would only result from isolated mishaps. Like the prisoner in *Cook*, the prisoners here fail to make any specific factual allegations regarding the production of the pentobarbital that would lead to its contamination, potency problems, or improper pH, and instead rely on general risks associated with compounding pharmacies. Without such specific allegations, the prisoners' complaint contains no more than speculative and hypothetical generalized assertions about the nature of compounding pharmacies. Likewise, the prisoners' allegation describing concerns arising from the method of venous access selected by the State amounts to no more than speculation. In sum, the prisoners have failed to plead sufficient factual matter, consistent with *Twombly* and *Iqbal*, necessary to state a plausible claim for relief. We conclude, therefore, that their claim regarding the substantial risk of severe pain allegedly imposed by Missouri's execution protocol is inadequately pled as a matter of law.

-14-

Prisoners challenging a method of execution must do more than allege a substantial risk of serious harm to state a claim under the Eighth Amendment. As we explained in *Lombardi*, 741 F.3d at 895-96, to establish a constitutional violation, an inmate ultimately must prove that another execution procedure exists that is feasible and readily implemented, and that the alternative method will significantly reduce a substantial risk of severe pain. *Lombardi*, 741 F.3d at 895-96; *see Baze*, 553 U.S. at 52 (plurality opinion); *id.* at 63 (Alito, J., concurring); *Raby v. Livingston*, 600 F.3d 552, 560-61 (5th Cir. 2010); *Cooey v. Strickland*, 589 F.3d 210, 220 (6th Cir. 2009). The existence of such an alternative method of execution, therefore, is a necessary element of an Eighth Amendment claim, and this element—like any element of a claim—must be pleaded adequately.

To address this point, the prisoners' second amended complaint merely "concede[s] that other methods of lethal injection the Department could choose to use would be constitutional." R. Doc. 338, at 148. In our view, this "concession" is insufficient to allege the second element of an Eighth Amendment claim that challenges a method of lethal injection. The complaint does not assert that the "other methods of lethal injection" it references are feasible and readily implemented, or that they would significantly reduce a substantial risk of severe pain allegedly caused by the present method. Even a barebones allegation to that effect, moreover, would not be adequate: a "formulaic recitation of the elements of a cause of action" is insufficient to state a claim under Rule 8(a)(2). *Iqbal*, 556 U.S. at 678. The pleading must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). The second amended complaint includes no factual matter that even hints at how the State—drawing on feasible and readily implemented alternatives—could modify its lethal-injection protocol to reduce significantly the alleged substantial risk of severe pain. We therefore agree with the district court that the prisoners' "naked assertion" that other

methods would be constitutional, devoid of further factual enhancement, fails to state a claim under the Eighth Amendment.

The prisoners respond that the Supreme Court's decision in *Hill v. McDonough*, 547 U.S. 573 (2006), illustrates the sufficiency of their complaint. The issue in *Hill* was whether a prisoner's challenge to the constitutionality of Florida's lethal-injection protocol could proceed as an action for relief under 42 U.S.C. § 1983, or whether it must be brought as an action for a writ of habeas corpus under 28 U.S.C. § 2254. *Id.* at 576. Hill's complaint conceded that "other methods of lethal injection the Department could choose to use would be constitutional," and the State had not argued that enjoining the present method "would leave the State without any other practicable, legal method of executing Hill by lethal injection." *Id.* at 580. The Court held under those circumstances that the action could proceed under § 1983, because "Hill's action if successful would not necessarily prevent the State from executing him by lethal injection." *Id.* at 580.

In reaching that conclusion, the *Hill* Court rejected a suggestion from the United States that a prisoner seeking to proceed under § 1983 rather than through habeas corpus must identify an alternative, authorized method of execution. *Id.* at 582. The Court explained that it would not impose a "heightened pleading requirement[]" as a prerequisite to the prisoner proceeding under § 1983, because "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts." *Id.* at 582 (citing Fed. R. Civ. P. 8, 9; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-14 (2002)).

The *Hill* opinion's references to Rule 8 and *Swierkiewicz,* and a later citation of *Hill* in *Jones v. Bock*, 549 U.S. 199, 213 (2007), have prompted our careful consideration. We think the better reading, however, is that *Hill* did not address the elements of a successful claim under the Eighth Amendment or establish that Hill's

complaint stated a claim that would survive a motion to dismiss. The question decided in *Hill* concerned only the *cognizability* of a complaint under § 1983, as opposed to habeas corpus. The Court said specifically that "the merits of Hill's underlying action are . . . not before us." *Hill*, 547 U.S. at 585. Whether Hill's complaint stated a claim for relief under Rule 8 and the Eighth Amendment is a question that "goes to the merits" of the underlying action. *Bond v. United States*, 131 S. Ct. 2355, 2362 (2011). It was not until two years after *Hill*, in *Baze*, when the Court eventually addressed the substance of the Eighth Amendment and the elements of a claim challenging a lethal-injection protocol. *Jones*, also decided before *Baze*, simply reaffirmed a proposition with which we do not quarrel—*i.e.*, that specific pleading requirements are mandated by the federal rules and generally not through case-by-case determinations of the courts. 549 U.S. at 213. We disagree with Judge Shepherd, *post*, at 44, and the dissenting judges, *post*, at 38-40, that requiring a plaintiff to plead the elements of an Eighth Amendment claim as defined in *Baze* is a "heightened pleading requirement" that exceeds the requirements of Rule 8 as explained in *Iqbal* and *Twombly*.[6]

The inference that *Hill* did not address the sufficiency of Hill's complaint is strengthened by the opinions in *Baze*, where two Justices opined that "a method of execution violates the Eighth Amendment only if it is deliberately designed to inflict

---

[6]Judge Bye, *post*, at 40-41, suggests incorrectly that this court's order denying rehearing in *Lombardi* established that a prisoner could state an Eighth Amendment claim without identifying a feasible alternative if he merely conceded that other methods of lethal injection the State could choose to use would be constitutional. The *Lombardi* order simply recited the concession made by the plaintiffs in *Hill*, and observed that the plaintiffs in *Lombardi* did not make such an allegation. *In re Lombardi*, 741 F.3d 903, 905 (8th Cir. 2014). The order declared that "*[w]e were not required to address* whether alleging that the current method of execution creates a substantial risk of harm when compared to known and available alternatives, without specifying an alternative, would be sufficient to state a claim in light of *Hill* and *Baze*." *Id.* (emphasis added).

pain." *Baze*, 553 U.S. at 94 (Thomas, J., concurring). Hill alleged only that Florida's method of execution created a risk of severe pain and that other unspecified methods of execution would be constitutional; there is no indication in the opinion that he alleged a deliberate design by the State of Florida to inflict pain during an execution. That *Hill* was a unanimous opinion—joined by the concurring Justices in *Baze*—fortifies our view that the decision addressed only cognizability under § 1983, not the plausibility of the prisoner's claim under Rule 8 and the Eighth Amendment.

The prisoners contend alternatively that the rule announced in *Baze* applies only where—as in *Baze* itself—a prisoner alleges that a lethal-injection protocol is unconstitutional because the State easily could change to an alternative method of execution that is likely to reduce a significant risk of pain. We think that is an implausible reading of the *Baze* plurality opinion. On the prisoners' view, a plaintiff who alleges a significant risk of severe pain *and* an alternative that would reduce the risk must satisfy the *Baze* standard for an alternative method of execution, but a prisoner who alleges *only* a significant risk of severe pain need not propose an alternative method. The suggested rule would render the *Baze* plurality's extensive discussion of alternative methods superfluous, and we are loathe to assume that the plurality engaged in such a meaningless exercise. *See Baze*, 553 U.S. at 56-61.

The prisoners also urge that the Supreme Court's grant of a stay of execution in *Bucklew v. Lombardi*, 134 S. Ct. 2333 (2014), "repudiates the rule of *Lombardi*," and shows that a prisoner need not allege an alternative method of execution to state a claim under the Eighth Amendment. In May 2014, the Court granted a stay of Russell Bucklew's execution pending appeal in an order that stated as follows:

> Application for stay of execution of sentence of death presented to Justice ALITO and by him referred to the Court treated as an application for stay pending appeal in the United States Court of Appeals for the Eighth Circuit. Application granted pending disposition of petitioner's

-18-

appeal.  We leave for further consideration in the lower courts whether an evidentiary hearing is necessary.

*Id.*

The Court's brief order does not address the substance of Bucklew's appeal or the basis for possible success on the merits.  Although Bucklew urged that the district court erred in requiring him to allege a feasible and more humane method of execution, he also asserted that "[t]o the extent that this Court, or any lower court, believes that pleading an 'alternative method' is necessary, Mr. Bucklew has indeed proposed an 'alternative.'" App. 821-22.  The unexplained order in *Bucklew* thus does not resolve whether the prisoners must plead the existence of an alternative method of execution that meets the criteria of *Baze*.

The prisoners further contend that they cannot propose a reasonably available alternative method of execution without discovery of information about the State's present suppliers of lethal drugs, so the *Lombardi* rule is unworkable in practice.  We doubt the rule is as "unworkable" as the prisoners suggest.  Their complaint is accompanied by affidavits from experts who criticize the use of compounded pentobarbital as a lethal drug.  These or similar experts presumably are in a position to know and to inform the prisoners whether some other lethal drug exists that would significantly reduce the alleged risk of pain arising from the current method.  In any event, the Supreme Court has rejected the notion that discovery must be available to a plaintiff who cannot allege sufficient factual matter to suggest plausibly an entitlement to relief.  *See Twombly*, 550 U.S. at 556-57.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

Although policy reasons do not justify imposing a *heightened* pleading requirement, *see Swierkiewicz*, 534 U.S. at 513, "the practical significance of the Rule 8 entitlement requirement" should not be ignored. *Twombly*, 550 U.S. at 557-58. In *Twombly*, the Court illustrated the practical significance of the Rule 8 requirement by adverting to the high cost of discovery in antitrust cases and the modest success of judicial supervision in checking discovery abuse. *Id*. at 558-59. In this capital litigation, it should be remembered that one stated objective of the prisoners' lawsuit is to pressure the State's suppliers and agents to discontinue providing the drugs and other assistance necessary to carry out lawful capital sentences. The second amended complaint alleges that confidentiality of the States' drug manufacturers and suppliers "prevents the . . . suppliers' associations, customers, and prescribing or referring physicians from censuring or boycotting them," and that protecting the identity of the State's health care professionals unreasonably restricts their "associations and colleagues from de-certifying or otherwise censuring them or boycotting them." R. Doc. 338, at 140-41.

In this very case, after the State's former drug supplier was identified through information in the public domain, a Missouri prisoner sued the supplier in Oklahoma. The supplier then elected to discontinue providing drugs to the State rather than endure the expense and burdens of litigation. R. Doc. 353, at 1-2, 10-13, 190-93. As for the possibility of protecting the confidentiality of sensitive identities after discovery in litigation, counsel for the prisoners expressed concern that it could be very difficult to investigate the physician, pharmacist, and laboratory without disclosing their roles in the execution process, and suggested there were "many ways in which investigating the pharmacy might place the pharmacy's identity, status, and role at issue before whoever we would be talking to." R. Doc. 224, at 12-16. The district court acknowledged that "it may be that there's just no way given the circumstances to keep it confidential because of the central nature of these people to the current dispute." *Id*. at 16.

The real potential that unwarranted discovery would serve as a back-door means to frustrate the State's ability to carry out executions by lethal injection counsels in favor of careful adherence to the requirements of Rule 8, as explicated in *Iqbal* and *Twombly*. A groundless Eighth Amendment claim should not be permitted to achieve indirectly a *de facto* injunction against a lawful method of execution.

For these reasons, we adhere to our conclusion in *Lombardi* that without a plausible allegation of a feasible alternative method of execution that would significantly reduce a substantial risk of serious pain, or a purposeful design by the State to inflict unnecessary pain, the prisoners have not stated an Eighth Amendment claim based on the State's use of compounded pentobarbital in executions. We further conclude that the allegation in the second amended complaint that "other methods of lethal injection the Department could choose would be constitutional" does not contain sufficient factual matter to state a claim to relief that is plausible on its face. The district court thus properly dismissed the prisoners' Eighth Amendment claim.[7]

---

[7]Judge Shepherd, while voting to affirm, also files a "dissenting" opinion on the ground that Part II.B is unnecessary to the decision. It is not uncommon for courts to decide cases on alternative grounds, *e.g.*, *United States v. Farlee*, 757 F.3d 810, 820 (8th Cir. 2014), and the Supreme Court recently noted the "unremarkable proposition" that a court's decision to rely on one of two possible alternative grounds does not strip it of power to decide the second question, particularly when the court's decree is subject to review by the Supreme Court. *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 729 (2013). Given our conclusion in Part II.B, moreover, it could just as well be said that Part II.A concerning the complaint's allegations of a substantial risk of severe pain is unnecessary. Indeed, this court in *Lombardi* (joined by Judge Shepherd) concluded that a previous complaint filed by the prisoners failed to state a claim solely because the prisoners did not make a sufficient allegation about an alternative method of execution. 741 F.3d at 895-96.

III.

The prisoners next argue that they have a serious medical need to be free from gratuitous pain during their executions, and that the state officials act with deliberate indifference to their need by using compounded pentobarbital as the lethal drug in the State's execution procedure. The district court rejected this claim on two grounds: (1) that the officials are not addressing medical needs of the prisoners in carrying out executions, and (2) that the prisoners have not pleaded adequately that the State's lethal-injection protocol inflicts *unnecessary* pain in violation of the Eighth Amendment.

Assuming without deciding that an Eighth Amendment deliberate-indifference claim based on medical needs is not limited to cases involving medical procedures, *see Nelson v. Campbell*, 541 U.S. 637, 644-45 (2004); *Helling*, 509 U.S. at 29-30, we agree with the district court that the prisoners have not stated a claim. The Eighth Amendment protects against the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner must allege both that a deprivation of rights is "objectively, sufficiently serious," and that a state official is deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834 (internal quotation omitted). For reasons discussed in Part II, the prisoners have not pleaded that the use of compounded pentobarbital will result in the *unnecessary* and wanton infliction of pain.

IV.

The prisoners contend that the state officials violated the Ex Post Facto Clause of the federal Constitution when they changed the execution protocol to provide for the use of compounded pentobarbital, because the change allegedly increased the risk of a painful execution. The Ex Post Facto Clause forbids enactment of a "law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to

the crime, when committed." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 516 (1995) (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798)). The prisoners' claim fails in light of *Lombardi*, where this court held that an identical *ex post facto* claim asserted in an earlier complaint failed to state a claim. 741 F.3d at 896-97. We reasoned that "[t]he manner of punishment for capital murder in Missouri at all relevant times . . . has been death by lethal injection or lethal gas." *Lombardi*, 741 F.3d at 896 (citing Mo. Rev. Stat. § 546.720.1). Where, as here, "only the mode of producing death has changed, with no allegation of superadded punishment or superior alternatives, the Ex Post Facto Clause[ is] not implicated." *Id.* at 897 (internal quotation mark omitted).

The prisoners also complain that they did not have fair notice that Director Lombardi could change the method of execution to include compounded pentobarbital, because that method allegedly violates the federal Food, Drug, and Cosmetics Act and the Controlled Substances Act. The prisoners note *Lombardi*'s statement that when the prisoners committed their crime, they "had fair notice" that death was the prescribed punishment, and fair notice "of the Director's discretion to determine the method of execution." 741 F.3d at 897. The Ex Post Facto Clause, however, is concerned with "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). Whether the prisoners had specific notice that the Director might select a particular lethal drug is not dispositive, so long as the State has not increased the punishment for the offenses of conviction. We therefore adhere to our conclusion in *Lombardi* that the prisoners fail to state a plausible *ex post facto* claim because the punishment—death—has remained the same; "only the mode of producing death has changed," and the prisoners have not alleged "superadded punishment or superior alternatives." 741 F.3d at 897 (internal quotation mark omitted).

V.

The prisoners next contend that the Missouri state officials violated their right of access to the courts under the Due Process Clause by failing to provide them with the timely and adequate notice of the proposed execution method needed to litigate the lawfulness of the execution protocol. We agree with the district court that the prisoners failed to state a claim based on alleged infringement of their right to access the courts. State prisoners have a constitutional "right of access to the courts," *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (emphasis omitted), but this right does not guarantee the ability "to *discover* grievances, and to *litigate effectively* once in court." *Id.* at 354. The right of access to the courts is satisfied if the prisoner has "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. The prisoners' claim that they are unable to discover information regarding the execution protocol is thus insufficient as a matter of law to state a due process claim. *Lewis*, 518 U.S. at 354; *Williams v. Hobbs*, 658 F.3d 842, 851-52 (8th Cir. 2011); *Giarratano v. Johnson*, 521 F.3d 298, 306 (4th Cir. 2008). "The prisoners do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information needed to discover a potential Eighth Amendment violation." *Williams*, 658 F.3d at 852.

On appeal, the prisoners present a new argument—that their "life interest entitles them to notice of material information about the lethal drug with which they will be executed." They rely on the procedural due process decision of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and urge that the private interests served by disclosure and the risk of an erroneous deprivation of rights without disclosure outweigh the State's interest in avoiding disclosure of details about the lethal drug and its provenance.

The prisoners did not develop an argument based on *Mathews* in the district court, and it is too late to raise it for the first time on appeal. In any event, the analogy to *Mathews* is inapt. *Mathews* involved an undisputed deprivation of a property interest (denial of social security benefits), and the question was whether the claimant was entitled by the Due Process Clause to a pre-deprivation hearing as opposed to merely a post-deprivation hearing. *Id.* at 332-33. The prisoners in this case already have received due process for the deprivation of their life interests: They were convicted and sentenced to death after a trial in Missouri court, and their convictions and sentences were upheld on appeal.

At this point, the prisoners seek to discover information about the State's lethal-injection protocol in order to determine whether the protocol violates the Eighth Amendment. The prisoners, however, have not pleaded a deprivation of rights under the Eighth Amendment. This is not a case like *Mathews*, therefore, where there was an undisputed deprivation of an interest protected by the Due Process Clause, and the question was what process is due before the State may accomplish the deprivation. *Id.* Rather, the prisoners here—like the plaintiffs in *Wellons*, 754 F.3d at 1267, and *Sepulvado v. Jindal*, 729 F.3d 413, 419-20 (5th Cir. 2013)—claim a freestanding right to detailed disclosure about Missouri's execution protocol. We agree with the Eleventh and Fifth Circuits that the Constitution does not require such disclosure. *Wellons*, 754 F.3d at 1267; *Sepulvado*, 729 F.3d at 419-20. A prisoner's "assertion of necessity—that [the State] must disclose its protocol so he can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest." *Sepulvado*, 729 F.3d at 419.

## VI.

The prisoners next press a claim that the Missouri officials violate the Equal Protection Clause by executing prisoners while legal activity seeking to stay their executions is pending, because the practice contravenes the State's written

-25-

Chronological Sequence of Execution policy. They cite the executions of Joseph Franklin, Alan Nicklasson, and Herbert Smulls, which were carried out while a pleading was pending in the district court, the court of appeals, or the Supreme Court. The prisoners' theory is that forestalling executions until all litigation is finished is a "core" provision of the execution protocol, and that deviating from a "core" provision violates their rights to equal protection of the laws.

The relevant portion of the execution policy provides that at 11:15 p.m. on the eve of an execution:

> Director of the Department of Corrections/designee advises (ERDCC Warden) that (Inmate Name) may be escorted to the execution room if no stay is in place and no legal activity is in progress to prevent the execution.
>
> If there is pending legal activity to halt the execution process, (Inmate Name) will remain in his holding cell and there will be no IV or line established until authority is granted to do so by the Director of the Department of Corrections/designee.

App. 335-36.

The prisoners contend that the policy permits the Director to grant the Warden authority to escort a prisoner from his cell to the execution chamber only if there is no legal activity in progress designed to halt the execution. They reason that if the second paragraph of the policy allowed the Director to initiate an execution procedure even while legal proceedings were pending, then the first paragraph concerning actions taken when "no legal activity is in progress" would be superfluous.

The prisoners' reading of the policy is unlikely: It would allow an inmate to thwart the State's ability to carry out a lawful sentence simply by making repeated court filings designed to prevent an execution during the 24-hour period designated

-26-

by the Supreme Court of Missouri for carrying out the sentence. One can imagine counsel for a prisoner even asserting an ethical obligation to ensure that some legal activity remains in progress for a full twenty-four hours. We are skeptical of an interpretation of the State's policy that could effectively foreclose the State's ability to carry out lawful sentences.

The policy is not a model of clarity, but it should not be understood to forbid an execution whenever there is pending legal activity designed to stop the execution. The policy does not expressly require the Director to refrain from carrying out a sentence until legal activity has ceased. To the contrary, the second paragraph quoted above contemplates that the Director may grant the Warden authority to begin preparations for an execution even when legal activity is ongoing. The first quoted provision—that the Director may advise the Warden to escort the inmate to the execution room if no legal activity is in progress—applies by its terms only at 11:15 p.m. on the eve of a date of execution. The chronology does not address a circumstance in which legal activity delays an execution until later in the 24-hour period. The second quoted paragraph implies that the Director retains authority to begin preparations for an execution at a later time despite ongoing legal activity. The prisoners do not allege that the officials have escorted inmates to the execution room on the eve of the execution while legal activity is pending: In the cases of Franklin, Nicklasson, and Smulls, a district court or a panel of this court entered a stay of execution that was later vacated, and the State eventually proceeded later in the 24-hour period authorized for the execution. We therefore conclude that the prisoners have not stated a claim under the Equal Protection Clause based on alleged violations of the Department's execution policy.

Assuming for the sake of analysis, however, that the state officials deviate from the execution protocol by carrying out sentences while legal activity is pending, the practice does not violate the Constitution. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its

-27-

jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold it so long as it bears a rational relation to some legitimate end." *Vacco v. Quill*, 521 U.S. 793, 799 (1997) (internal quotation marks and brackets omitted).

The prisoners apparently invoke the "fundamental right" strand of equal protection analysis. They argue that it is unconstitutional for the State to disregard a "core provision" of its execution protocol, and that a prohibition on executions before legal activity has ceased is a "core provision." The prisoners draw the term "core provision" from two decisions of a district court concerning Ohio's execution protocol. *See Cooey v. Kasich*, 801 F. Supp. 2d 623 (S.D. Ohio 2011); *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d 1044 (S.D. Ohio), *aff'd*, 671 F.3d 601 (6th Cir. 2012). The Ohio district court reasoned that because certain "core" provisions of the State's execution protocol were the "precise procedural safeguards" that had been "heralded in prior discussions of Eighth Amendment claims" in the same litigation, "core deviations" from the protocol burdened a prisoner's "fundamental right" for purposes of equal protection analysis. *Cooey*, 801 F. Supp. 2d at 652-53. The court thought certain "core deviations . . . subverted the key constitutional principles that control the execution process." *In re Ohio Execution Protocol Litig.*, 840 F. Supp. 2d at 1049. *See also Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (concluding that an inmate stated an equal protection claim by alleging that the State of Alabama substantially deviated from an execution protocol, because "[s]ignificant deviations from a protocol that protects inmates from cruel and unusual punishment can violate the Eighth Amendment").

Whatever the merits of the Ohio district court's analysis with regard to the execution protocol at issue in those decisions, the prisoners here have not stated a claim that Missouri's alleged deviations from its protocol burden a fundamental right.

-28-

There is no "fundamental right" to avoid execution while no judicial stay is in effect but legal activity is pending. *E.g.*, *Hamilton v. Texas*, 497 U.S. 1016 (1990) (denying stay of execution despite four votes to grant writ of certiorari). Fundamental rights consist of only those rights that are "explicitly or implicitly guaranteed by the Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 32-34 (1973). The State's decision to carry out a lawful sentence when there is no judicial stay in place does not burden a prisoner's rights under the Eighth Amendment or other constitutional provision. If a prisoner advances an eleventh-hour challenge to an execution, the courts have authority to enter temporary administrative stays of execution when necessary and appropriate to allow consideration of constitutional claims. The State may deem it prudent to delay an execution while litigation is pending, especially when final resolution is likely to occur before time expires for carrying out the sentence on the appointed date. But the Constitution does not require the State to implement a self-imposed stay when a state or federal court has declined to act.

VII.

The prisoners also argue that they stated a claim that the First Amendment entitles them to information regarding the source of the drug to be used in their executions. A Missouri statute, Mo. Rev. Stat. § 546.720.2, provides that "[t]he identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential." The prisoners contend that the statute violates their First Amendment rights insofar as it permits Missouri to conceal the identity of the compounding pharmacy that provides the pentobarbital and the identities of the pharmacy's suppliers of ingredients for the compounding process. The prisoners argue that concealing this information violates their right of access to records associated with governmental execution proceedings and constitutes an impermissible content-based restriction on access to information.

A divided panel of the Ninth Circuit, considering a comparable First Amendment claim, recently enjoined the execution of an Arizona inmate until the State provided him with the name and provenance of drugs to be used in his execution. The Supreme Court promptly vacated the injunction without dissent. *Wood v. Ryan*, 759 F.3d 1076, 1088 (9th Cir.), *vacated*, 135 S. Ct. 21 (2014). The Eleventh Circuit has ruled that the First Amendment does not grant a prisoner a right "to know where, how, and by whom the lethal injection drugs will be manufactured." *Wellons*, 754 F.3d at 1266-67. *See also Owens v. Hill*, 758 S.E.2d 794, 805-06 (Ga. 2014). We agree with the Eleventh Circuit and the dissenting opinion in the Ninth Circuit and conclude that the prisoners failed to state a claim under the First Amendment.

The Supreme Court held in *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-13 (1986), that the public enjoys a qualified right of access to certain criminal proceedings. The Court has recognized this right of access in preliminary hearings, *id.* at 10, criminal trials, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 579-80 (1980), and voir dire, *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 505-11 (1984). This court has held that the First Amendment right of access applies to some records filed in criminal proceedings—specifically, documents filed in support of search warrant applications—*see In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 572-73 (8th Cir. 1988), but unlike the Ninth Circuit, we have not ruled that an execution constitutes the kind of criminal proceeding to which the public enjoys a qualified right of access under the First Amendment. *Cf. Cal. First Amendment Coal. v. Woodford*, 299 F.3d 868, 877 (9th Cir. 2002).

Assuming for the sake of analysis, however, that the *Press-Enterprise* analysis applies to executions, and even to information regarding the source of drugs to be used in lethal injections, the prisoners fail to state a claim for a qualified right of public access. To determine whether a First Amendment public right of access attaches to a particular proceeding, courts consider "whether the place and process

-30-

have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise*, 478 U.S. at 8. In *Press-Enterprise*, the Court evaluated whether the preliminary hearings at issue had a "tradition of accessibility" under the first prong of the analysis, and concluded that from the early nineteenth century "until the present day, the near uniform practice of state and federal courts has been to conduct preliminary hearings in open court." 478 U.S. at 10.

The prisoners assert that they have a similar right to know the identities of the pharmacy that compounds the pentobarbital and of its suppliers of chemicals, yet they fail to allege a "tradition of accessibility" to that information. We have reserved judgment about whether even an execution itself must be made public, *Rice v. Kempker*, 374 F.3d 675, 678 n.2 (8th Cir. 2004), and the prisoners have not alleged facts or cited authority establishing that the particulars of execution methods have "historically been open to the press and general public." *Press-Enterprise*, 478 U.S. at 8. The prisoners have alleged only that Missouri did not include the suppliers of drugs for lethal injections as members of the confidential execution team before October 2013. That the identities of the drug suppliers were not made confidential by statute or regulation before October 2013 falls well short of the required "tradition of accessibility" that might give rise to a right of access. Indeed, the prisoners do not even allege that the information was accessible to the public before October 2013. Even if the prisoners can show, moreover, that Missouri "at one time voluntarily disclosed such information, it does not a tradition make." *Wood*, 759 F.3d at 1095 (Bybee, J., dissenting). In sum, the prisoners fail to state a claim of a qualified right of public access to information regarding the source of the compounded pentobarbital to be used in their executions because they do not plausibly allege a history of openness to the general public. The complaint likewise provides no basis to conclude that public access to detailed information about execution protocols plays a significant positive role in the functioning of the process in question, given that the practical

-31-

effect of public disclosure would likely be frustration of the State's ability to carry out lawful sentences.

The prisoners also argue that the confidentiality requirements of § 546.720.2 constitute a content-based restriction on access to information that merits strict scrutiny. They rely on *Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653 (2011), where the Court held that a Vermont law prohibiting the sale and use of pharmaceutical prescriber-identifying information was a restriction on "speech with a particular content," because sale of that information was permitted in certain exceptional situations "based in large part on the content of a purchaser's speech," and subsequent use of the information was limited to non-marketing purposes. *Id.* at 2662-63. The Missouri statute challenged by the prisoners is different. The statute does not limit the dissemination of identities of execution team members based on the identity of the individual seeking that information and the likely content of that individual's speech, and the law does not limit the use of any such information to certain types of speech. The prisoners thus fail to state a claim that § 546.720.2 is a content-based restriction on access to information that merits strict scrutiny.

## VIII.

The prisoners complain that the use of compounded pentobarbital as a lethal drug in executions violates the federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301, *et seq.*, and the Controlled Substances Act. 21 U.S.C. §§ 801, *et seq.* They acknowledge, however, that there is no private right of action under federal law to enforce these alleged violations. 23 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *Durr v. Strickland*, No. 2:10-cv-288, 2010 WL 1610592, at *2-3 (S.D. Ohio), *aff'd*, 602 F.3d 788, 789 (6th Cir. 2010) (affirming district court's holding that no private right of action exists under the Controlled Substances Act). Instead, they assert that the Missouri Administrative Procedure Act

-32-

gives them a private right of action to sue for alleged violations of the federal statutes. The district court ruled that the prisoners failed to state a claim.

Under the Missouri APA, where there is no formal hearing before a state agency in a contested case, a court may review a decision of an administrative officer or body that "determin[es] the legal rights, duties or privileges of any person." Mo. Rev. Stat. § 536.150.1; *see City of Valley Park v. Armstrong*, 273 S.W.3d 504, 506-07 (Mo. 2009) (en banc); *State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 327-28 (Mo. 1995) (en banc). The court may determine whether the decision is "unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion." Mo. Rev. Stat. § 536.150.1.

The prisoners fail to state a claim under the Missouri APA because they have not alleged that the decision of corrections officials to adopt the execution protocol determines their "legal rights, duties or privileges." "Section 536.150 pertains only to review of decisions affecting private rights and interests." *St. Louis Cnty v. State Tax Comm'n*, 608 S.W.2d 413, 414 (Mo. 1980) (en banc). "[T]o make a prima facie case under Section 536.150, an individual must plead facts that, if true, would show that he has been denied some legal right or entitlement to a privilege." *McIntosh v. LaBundy*, 161 S.W.3d 413, 416 (Mo. Ct. App. 2005). The plaintiff must thus identify a "rule, statute, or other authority creating a legal right or entitlement." *Id.* at 417.

The prisoners allege a right not to "be executed in a manner that violates federal laws protecting the end-users of regulated pharmaceuticals." They fail, however, to identify a statute or other authority that creates a private legal right or entitlement. The federal statutes cited in the complaint do not create private rights of action. The prisoners cannot employ the Missouri APA to allege the denial of a private legal right under the federal statutes when the federal statutes themselves do not create such a private legal right.

-33-

\*    \*    \*

The judgment of the district court is affirmed.

BYE, Circuit Judge, with whom MURPHY and KELLY, Circuit Judges, join, dissenting.

The constitutionality of the death penalty itself is not before us in this case, and we proceed on the assumption the death penalty is constitutional.  While it follows there must be a constitutional means of carrying out a death sentence, it has not been determined that Missouri's current execution protocol is constitutional.  The district court erred in dismissing the death-row inmates' suit, and the death-row inmates should have the opportunity to conduct discovery and fully litigate their claims.  I therefore respectfully dissent.

I

I disagree with the entirety of Part II of the majority's opinion, which dismisses the death-row inmates' Eighth Amendment claim.  The majority provides two alternative reasons for dismissing the suit:  (1) as a matter of law, the death-row inmates' claim regarding the substantial risk of severe pain imposed by Missouri's execution protocol is inadequately pled; and (2) the death-row inmates have failed to adequately plead a readily-available alternative method of execution.

A

The majority first holds the death-row inmates have failed to plead sufficient factual matter on the risk of harm to state a plausible claim of relief.  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  To withstand the State's Rule 12(b)(6)

motion, the complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

"[T]aking all facts alleged in the complaint as true, and making reasonable inferences in favor of the nonmoving party," the death-row inmates have sufficiently pled their Eighth Amendment claim. Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir.) cert. denied, 135 S. Ct. 361 (2014). The death-row inmates' complaint alleges the compounded pentobarbital used by Missouri creates a substantial risk of harm and inflicts a substantial risk of severe pain. The death-row inmates have also shown the risk of pain is objectively intolerable.

The death-row inmates' second amended complaint includes thirty-two attached exhibits, including declarations and affidavits from medical professionals. The pleadings demonstrate substantial concerns with compounded pentobarbital, including potency levels, contamination, pH levels, and shelf-life. Despite such pleadings, the majority concludes these potentialities are hypothetical and do not "rise[] to the level of 'sure or very likely' to cause serious harm or severe pain." The majority takes offense at the death-row inmates' "allegations of generalized harms" from compounded pentobarbital, but such allegations are exactly what must be pled to survive a Rule 12(b)(6) motion to dismiss. Rule 8 only requires "a short and plain statement" showing the death-row inmates are entitled to relief. No higher pleading standard is applicable to this suit. Cf. Fed. R. Civ. P. 9(b) (establishing heightened pleading standards in certain cases, such as fraud or mistake). The death-row inmates could not possibly include allegations more specific to the compounding done for or by Missouri without the benefit of discovery. To know about Missouri's particular compounding procedure and the particular dangers of such a procedure, the death-row inmates need discovery about the various sources of the drugs, how the drugs are

compounded, whether the compounded drugs are tested for potency, contamination, or pH levels, and how and for how long the compounded drugs are stored.  Missouri has steadfastly refused to disclose any information related to the compounded pentobarbital.  See e.g., In re Lombardi, 741 F.3d 888, 889 (8th Cir.), reh'g denied, 741 F.3d 903 (8th Cir.) and cert. denied sub nom. Zink v. Lombardi, 134 S. Ct. 1790 (2014) (ruling in favor of Missouri in an appeal "to prohibit the district court from enforcing orders that [the State] must disclose in civil discovery, for use by opposing counsel, the identities of (1) the physician who prescribes the chemical used in Missouri executions, (2) the pharmacist who compounds the chemical, and (3) the laboratory that tests the chemical for potency, purity, and sterility").  It is not the death-row inmates' burden at the pleading stage to show their claims are "sure or very likely;" the death-row inmates must merely show they have stated a claim for relief.

The majority is unconcerned with expert opinions and a host of other evidence which shows improperly compounded pentobarbital would "sure or very likely" cause unconstitutionally painful deaths.  The majority acknowledges this evidence exists but focuses on the one thing the death-row inmates cannot know at this stage:  "specific factual allegations regarding the production of the pentobarbital" to be used in their executions.  Because the death-row inmates have adequately pled that improperly compounded pentobarbital is sure or very likely to cause pain and suffering at an unconstitutional level, the death-row inmates have pled enough to survive a motion to dismiss under Rule 12(b)(6).  Thus, the death-row inmates should be allowed to utilize discovery in the normal course of litigation to determine the actual process used by Missouri's current compounding pharmacies.

B

In an alternative holding on the death-row inmates' Eighth Amendment claim, the majority finds the death-row inmates failed to plead a specific readily-available alternative method of execution and finds such a failure fatal to this suit.  I disagree.

In <u>Hill v. McDonough</u>, 547 U.S. 573, 576 (2006), the Supreme Court examined whether a death-row inmate challenging Florida's execution protocol had a cognizable suit under 42 U.S.C. § 1983, or whether such a claim needed to be brought under 28 U.S.C. § 2254. The Supreme Court clarified that a challenge to a state's execution procedure may proceed under § 1983, particularly when a "[c]omplaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin [the State] from executing [the plaintiff] in the manner they currently intend." <u>Hill</u>, 547 U.S. at 580 (internal quotation marks omitted). In explaining the requirements for a § 1983 challenge to execution protocols, the Supreme Court considered and rejected the proposition that "a capital litigant's § 1983 action can proceed [only] if . . . the prisoner identified an alternative, authorized method of execution." <u>Id.</u> at 582. In rejecting that proposition, the Supreme Court explained "[i]f the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper." <u>Id.</u> "Imposition of heightened pleading requirements, however, is quite a different matter. Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts." <u>Id.</u> (citing Fed. R. Civ. P. 8 and 9; <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512-14 (2002)).

A year later, the Supreme Court addressed the pleading requirements of exhaustion under the Prison Litigation Reform Act in <u>Jones v. Bock</u>, 549 U.S. 199 (2007). The Supreme Court, relying on the Federal Rules of Civil Procedure and rejecting a heightened pleading requirement, found the usual practice under the Federal Rules should be followed in § 1983 suits. The Supreme Court thereafter reaffirmed the pleading requirements for death-row inmates: "And just last Term, in <u>Hill</u> . . . , we unanimously rejected a proposal that § 1983 suits challenging a method of execution must identify an acceptable alternative." <u>Id.</u> at 212. In addressing the pleading requirements for death-row inmates challenging a method of execution, the Supreme Court has been clear: there is no heightened pleading rule requiring inmates to identify any alternative method of execution.

The majority dismisses these clear statements by the Supreme Court, and instead relies on Baze v. Rees, 553 U.S. 35 (2008), to justify the imposition of a heightened pleading standard. The Baze challenge to Kentucky's three-drug execution protocol came to the Supreme Court in a declaratory judgment action after "[t]he trial court held extensive hearings and entered detailed findings of fact and conclusions of law." Id. at 41. The death-row inmates in Baze, challenging Kentucky's execution protocol, alleged a readily-available alternative. The Supreme Court held "a condemned prisoner cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." Id. at 51. Rather, the Supreme Court established that *when an alternative method of execution is proposed*, "the proffered alternatives must effectively address a substantial risk of serious harm." Id. at 52 (internal quotation marks omitted). And, if a death-row inmate puts forward such a proposed alternative, it must be "feasible, readily implemented, and . . . significantly reduce a substantial risk of severe pain." Id.

Baze does not establish the standard for all execution-protocol challenges. Instead, Baze establishes that when death-row inmates can show a readily-available alternative with sufficient documented advantages, "a State's refusal to change its method can be viewed as 'cruel and unusual' under the Eighth Amendment." 553 U.S. at 52. Baze reaches no further than this holding. Baze did not purport to limit Eighth Amendment challenges of execution protocols to only those cases where death-row inmates propose an alternative method, and Baze did not change the pleading requirements for Eighth Amendment cases.

Despite the limited nature of Baze, the majority relies on Baze to establish that death-row inmates must plead a feasible and readily-available alternative method of execution. It is troubling the majority relies on Baze when Baze does not mention pleading requirements or the Federal Rules of Civil Procedure. Webster v. Fall, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so

-38-

decided as to constitute precedents."). But perhaps most troubling is the majority's reliance on <u>Baze</u> when <u>Baze</u> does not even mention <u>Hill</u> or <u>Jones</u>. <u>Shalala v. Ill. Council on Long Term Care, Inc.</u>, 529 U.S. 1, 18 (2000) ("Th[e Supreme Court] does not normally overturn . . . earlier authority *sub silentio . . . .*").

The Supreme Court warns "that courts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns." <u>Jones</u>, 549 U.S. at 212. Despite this rule, the majority bases its decision on policy considerations: whether discovery and litigation would pressure Missouri's suppliers and agents to discontinue providing the drugs for executions. The question of whether discovery is appropriate or necessary is not currently before this court. Neither is the question of an injunction about the potential harm the State might suffer from disclosure of drug providers. The majority appears to impose a heightened pleading standard for fear that this suit would otherwise eventually require the disclosure of information which it fears would hamper Missouri's ability to carry out executions. This is not a reason to impose a heightened pleading standard in opposition to Supreme Court precedent and the Federal Rules of Civil Procedure.

If policy concerns were relevant to the establishment of case-by-case pleading standards, policy concerns would weigh in favor of allowing this suit to proceed. It is troubling that under the majority's rule, the constitutionality of an execution method is determined *not* by the pain and suffering caused by that method, but rather by what resources a death-row inmate can garner to show an available alternative. If the manufacturers of safer drugs were willing to provide Missouri with execution drugs, Missouri's current execution protocol would likely be held unconstitutional. <u>See</u> <u>Baze</u>, 553 U.S. at 52 (discussing requirements for a § 1983 suit when an alternative method of execution is readily available). In no other area do the private acts of third-parties so influence the determination of whether a government act is unconstitutional. Making it even more difficult for death-row inmates, they now must surpass these

barriers at the pleading stage, rather than at the summary judgment stage after the completion of discovery.

Simply put, neither the Constitution nor the Federal Rules of Civil Procedure require a plaintiff challenging the constitutionality of government actions to simultaneously suggest a remedy–a remedy which cannot be to simply stop the unconstitutional activity. Such a heightened pleading standard has not been required in other constitutional cases, and should not be required here. Based on the foregoing reasons, I dissent from the imposition of any heightened pleading standards when death-row inmates challenge a state's method of execution.

C

Although I believe the pleading requirement imposed by the majority is an incorrect application of the law, I recognize my position in the minority and therefore find it prudent to comment on the resolution of this case. Even if the majority is correct in imposing this additional pleading requirement, it is improper to dismiss the death-row inmates' suit at this juncture. Rather, the matter should be remanded for the death-row inmates to amend their complaint because the death-row inmates' second amended complaint does, in fact, satisfy the pleading requirements previously suggested by the Eighth Circuit.

In my view, in denying rehearing in the case of In re Lombardi the Eighth Circuit clarified that death-row inmates alleging an Eighth Amendment violation based on the method of execution must, in their pleadings, (1) "concede[] that 'other methods of lethal injection the Department could choose to use would be constitutional,'" In re Lombardi, 741 F.3d 903, 905 (8th Cir. 2014) (en banc) (quoting Hill, 547 U.S. at 580); and (2) "allege[] 'that the challenged procedure presents a risk of pain the State can avoid while still being able to enforce the sentence ordering a lethal injection,'" id. (quoting Hill, 547 U.S. at 581). In their second amended

-40-

complaint, the death-row inmates "concede that other methods of lethal injection the Department could choose to use would be constitutional." Zink v. Lombardi, No. 12-4209, Doc. 338 at 202 (W.D. Mo. Feb. 2, 2014). Thus, the death-row inmates pleaded exactly what In re Lombardi required of them: a concession "that other methods of lethal injection the Department could choose to use would be constitutional." 741 F.3d at 905 (internal quotation marks omitted).

The Eighth Circuit now changes, once again, the pleading requirements for an Eighth Amendment claim. Because the death-row inmates complied with In re Lombardi, and because the Eighth Circuit is for the first time imposing a stricter pleading requirement, a remand is proper. The death-row inmates should have the opportunity to plead a named alternative method before the complaint is dismissed. However, in light of today's ruling dismissing the complaint, the death-row inmates, if they choose to do so, will have to settle for initiating new litigation in the district court and filing a complaint which complies with the newly-established pleading standards. For example, if the death-row inmates desire, the death-row inmates could propose as an available alternative an execution protocol using pentobarbital which was properly compounded at an FDA-approved compounding pharmacy, and has thereafter been tested for identity, potency, purity, and contamination.

D

The majority also extends the imposition of a heightened pleading requirement beyond the death-row inmates' Eighth Amendment claims. Without an explanation of this extension, the majority resolves the death-row inmates' medical needs claim "[f]or reasons discussed in Part II." The majority also dismisses the death-row inmates' due process claim at least in part based on the death-row inmates' failure to "plead[] a deprivation of rights under the Eighth Amendment." I disagree with any extension of the heightened pleading requirement, and dissent from these portions of the majority's opinion.

# III

The majority opinion establishes heightened pleading requirements for death-row inmates challenging a state's method of execution under the Eighth Amendment. This imposition is in opposition to governing Supreme Court precedent and the Federal Rules of Civil Procedure. In other words, the Eighth Circuit now prevents death-row inmates from truly accessing the federal courts: a death-row inmate cannot benefit from discovery and is prohibited from challenging even a truly unconscionable method of execution if no other methods are readily available and obvious at the pleading stage.

The death-row inmates have established the risk of using alleged compounded pentobarbital to carry out an execution, and have conceded other forms of execution are constitutional. Therefore, I would reverse the district court, stay the executions of the death-row inmates pending resolution of the suit, and remand for the district court to conduct discovery in its usual and normal course of business.

SHEPHERD, Circuit Judge, dissenting in part.

In *Lombardi*, because the prisoners had not conceded that other methods of lethal injection which the state of Missouri could choose would be constitutional, "[w]e were not required to address whether alleging that the current method of execution creates a substantial risk of harm when compared to known and available alternatives, without specifying an alternative, would be sufficient to state a claim in light of *Hill* and *Baze*." *In re Lombardi*, 741 F.3d. 903, 905 (8th Cir. 2014). The court now holds, in Part II.B. of this opinion, that even with such a concession the prisoners must indeed identify an alternative method of execution that is feasible, can be readily implemented, and will significantly reduce a substantial risk of severe pain in order to state an Eighth Amendment claim. I cannot agree with this conclusion.

First, it is not necessary for the court to reach this issue. In Part II.A. of this opinion we explain that the second amended complaint's Eighth Amendment challenge to Missouri's method of execution by lethal injection fails to state a claim because it does not include the requisite plausible allegations that the lethal execution protocol creates a substantial risk of severe pain. So holding, we need not reach the issue of the sufficiency of the second amended complaint's allegation of an alternative method of execution. *See Raby v. Livingston*, 600 F.3d 552, 560-61 (5th Cir. 2010) ("Because we find that Raby has failed to establish that the Texas lethal injection protocol creates a demonstrated risk of severe pain, we do not reach the second step of the *Baze* test, whether the risk created by the current protocol is substantial when compared to the known and available alternatives.").

Second, if in fact the issue is be addressed, I disagree substantively with the court's holding. In *Hill v. McDonough*, the Supreme Court considered whether a prisoner's Eighth Amendment challenge to Florida's lethal-injection protocol could proceed as a § 1983 action or must proceed as a habeas action. 547 U.S. 573, 576 (2006). In finding that the action could proceed under § 1983, the Court rejected the government's contention that the prisoner must plead an alternative means of execution to state a § 1983 claim. *Id.* at 582. The *Hill* Court noted that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal court." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-14 (2002)).

Lest there be any confusion about underpinnings of the holding, in its very next term, in *Jones v. Bock*, the Supreme Court explained, "[J]ust last Term, in *Hill v. McDonough*, we unanimously rejected a proposal that § 1983 suits challenging a method of execution must identify an acceptable alternative." 519 U.S. 199, 213 (2007) (internal citation omitted).

-43-

Reading *Hill* and *Jones* together, I cannot conclude that the Supreme Court has mandated a heightened pleading standard requiring identification of an alternative method of execution in this § 1983 action asserting an Eighth Amendment claim. The Supreme Court explicitly rejected such a requirement in *Jones*, and I take the Court to mean what it says. In Part II.B., this court attempts to confine *Hill* to its holding that an Eighth Amendment challenge to a lethal injection protocol may proceed under § 1983 action rather than a decision relating to the sufficiency of a complaint under the Federal Rules. In *Jones*, however, the Supreme Court addresses the adequacy of a complaint under Rule 8 and rejects court devised heightened pleading requirements.

Finally, in Part II.B., the court identifies the risk that allowing protracted discovery could have the practical effect of thwarting the State's ability to carry out any executions. Although I am cognizant of such a possibility, the Federal Rules of Civil Procedure govern the sufficiency of the second amended complaint rather than policy considerations. *See Jones*, 549 U.S. at 212 ("[C]ourts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns.").

For the reasons set forth in Part II.A. of the court's opinion, the second amended complaint's Eighth Amendment challenge to Missouri's lethal injection protocol must be dismissed because it does not include the requisite plausible allegations that the protocol creates the substantial risk of severe pain. However, I cannot agree with the court's conclusion that the prisoners must also identify an alternative method of execution in the complaint.

Accordingly, I join in all but Part II.B. of this opinion.

_____

-44-